In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-06-00050-CR


______________________________




ANDREW BLECKLEY, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 188th Judicial District Court


Gregg County, Texas


Trial Court No. 32,438-A




 




Before Morriss, C.J., Ross and Carter, JJ.


Memorandum Opinion by Justice Carter



MEMORANDUM OPINION



 After the trial court overruled his motion to suppress, Andrew Bleckley pled guilty to
possessing a controlled substance (methamphetamine) in an amount of four grams or more, but less
than 200 grams. See Tex. Health & Safety Code Ann. § 481.115(d) (Vernon 2003)
(criminalizing possession of penalty group 1 narcotics); see also Tex. Health & Safety Code
Ann. § 481.102(6) (Vernon Supp. 2006) (methamphetamine is penalty group 1 narcotic). The issue
of punishment was submitted to the trial court. The trial court sentenced Bleckley to ten years'
imprisonment. Bleckley now appeals, raising two issues that assert the trial court erred by overruling
his motion to suppress evidence. We affirm.

I. Standard of Review

 We recently set forth the appropriate standard of review in cases where the appellant
challenges the trial court's denial of a pretrial motion to suppress evidence:

The ruling of a trial court on a motion to suppress will not be set aside absent a
showing of abuse of discretion. Maddox v. State, 682 S.W.2d 563, 564 (Tex. Crim.
App. 1985); Jackson v. State, 968 S.W.2d 495, 498 (Tex. App.--Texarkana 1998,
pet. ref'd). On a motion to suppress, the trial court is the sole and exclusive trier of
fact and the judge of the credibility of witnesses, including the weight to be given
their testimony. Allridge v. State, 850 S.W.2d 471, 493 (Tex. Crim. App. 1991). 
Thus, the trial court is free to believe or disbelieve the testimony of any witness. 
This Court does not engage in its own factual review. Braggs v. State, 951 S.W.2d
877, 880 (Tex. App.--Texarkana 1997, pet. ref'd). Viewing the evidence in the light
most favorable to the trial court's ruling, we consider only whether the trial court
improperly applied the law to the facts. Romero v. State, 800 S.W.2d 539, 543 (Tex.
Crim. App. 1990). If the trial court's findings are supported by the record, this Court
is not at liberty to disturb them. Etheridge v. State, 903 S.W.2d 1 (Tex. Crim. App.
1994).

Green v. State, 93 S.W.3d 541, 544 (Tex. App.--Texarkana 2002, pet. ref'd). "In the absence of
explicit findings, we assume that the trial court made whatever appropriate implicit findings the
record supports." State v. Hunter, 102 S.W.3d 306, 309 (Tex. App.--Fort Worth 2003, no pet.)
(citing State v. Ross, 32 S.W.3d 853, 855-56 (Tex. Crim. App. 2000); Carmouche v. State, 10
S.W.3d 323, 327-28 (Tex. Crim. App. 2000)); see also Estrada v. State, 154 S.W.3d 604 (Tex.
Crim. App. 2005). And in reviewing a trial court's ruling, we must affirm if that ruling is correct
under any theory of law applicable to the case. Romero v. State, 800 S.W.2d 539, 543-44 (Tex.
Crim. App. 1990); Shaw v. State, 122 S.W.3d 358, 363 (Tex. App.--Texarkana 2003, no pet.). (1)

II. Factual Background

 Viewing the record in the light most favorable to the trial court's ruling, the proceedings
below adduced the following evidence: Kimberly Rene Chaney worked for a Wal-Mart store in
Longview as one of its loss prevention officers. One afternoon in June 2004, Chaney observed
Bleckley take four Band-Aid boxes from the pharmacy area. Chaney then saw Bleckley remove the
Band-Aids from two boxes and stuff them into the remaining two boxes. Chaney then saw Bleckley
head to another area of the store and drop the two now empty Band-Aid boxes behind some other
store merchandise. Bleckley next proceeded to the sporting goods section where he took a small
flashlight and secreted it inside his pocket. Bleckley then walked to the check-out area where he
paid for some other items (including the two overstuffed Band-Aid boxes) and left the store. Chaney
stopped Bleckley outside the store, detained him, took him to an employee training room in the back
of the store, and held him while she waited for the police to arrive. 

 While in the training room, Chaney took Bleckley's bag containing the overstuffed Band-Aid
boxes. Chaney removed those boxes from the bag and emptied the boxes' contents onto a desk. 
Chaney then took the appropriate number of Band-Aids and returned them to the appropriate boxes,
after which she gave the shopping bag (containing other items Bleckley had purchased, including
the two Band-Aid boxes for which he had paid) to Bleckley. Bleckley was then permitted to call his
girlfriend, Britney Nicole Smith, to come to the store to get his belongings and his vehicle. When
Smith arrived, Bleckley handed his Wal-Mart bag to Chaney, who then transferred the bag to Smith,
who in turn left the room where Bleckley was being held pending arrival of the police. As Smith
was leaving, Chaney realized she should not have allowed Smith to leave with Bleckley's shopping
bag. Chaney called Smith back into the room and took Bleckley's bag from Smith. Chaney testified
she took back the bag because she thought it was evidence and she wanted to turn it over to the
police officer on arrival. Chaney then held the bag and its contents until the police arrived. 

 After Officer James Bettis of the Longview Police Department arrived, Bleckley admitted
stealing two boxes of Band-Aids and the flashlight. Chaney turned over Bleckley's shopping bag
and its contents to the officer. Bettis testified he made the determination at that time to arrest
Bleckley for the misdemeanor theft, in accordance with his usual custom. (2) Bettis then searched
Bleckley and his belongings (including the Wal-Mart bag) for any contraband or weapons because
Bettis would be taking Bleckley to the Gregg County jail. During this search, which Bettis described
at different times as a search incident to arrest and as an inventory search, Bettis found a green felt
bag inside one of the Band-Aid boxes; (3) Bettis also found a small, silver canister in the shopping bag. 
Inside the green felt bag, Bettis found crystal methamphetamine. A small amount of
methamphetamine was also found in the silver canister. The aggregate weight of all the narcotics
was determined to be approximately 23.3 grams. 

III. Was Chaney's Taking of the Bag from Smith a Violation of Article 38.23?

 Bleckley now contends the trial court should have suppressed the drug evidence at issue in
this case because it was obtained as a result of Chaney's alleged theft of the bag from Smith, in
violation of Article 38.23 of the Texas Code of Criminal Procedure. That statute forbids the
admission of evidence seized by any person or officer when that evidence has been obtained in
violation of the state or federal constitutions, or in violation of state or federal law. Tex. Code
Crim. Proc. Ann. art. 38.23 (Vernon 2005). Bleckley contends Chaney's conduct was not permitted
under any exception to Article 38.23, including the shopkeeper's privilege, the Texas Court of
Criminal Appeals' opinion in Jenschke v. State, 147 S.W.3d 398 (Tex. Crim. App. 2004), or probable
cause of reasonable suspicion that the bag contained evidence related to the theft case. If any of
these exceptions apply, we may not say the trial court's ruling was erroneous. Cf. Romero, 800
S.W.2d at 543-44; Shaw, 122 S.W.3d at 363.

 In Jenschke, the Texas Court of Criminal Appeals held that, "when a person who is not an
officer . . . takes property that is evidence of crime, without the effective consent of the owner and
with intent to turn over the property to an officer, the conduct may be non-criminal even though the
person has intent to deprive the owner [of that property.]" 147 S.W.3d at 402. At issue in Jenschke
was whether critical evidence supporting the accused's rape conviction was admissible because the
parents of the rape victim obtained the evidence only after burglarizing the accused's vehicle. Id. at
399. The Texas Court of Criminal Appeals held the evidence was not admissible because the record
clearly shows the parents held onto the evidence for nearly two years before turning it over to
authorities; thus, it could not be said the parents burglarized the accused's vehicle with the requisite
intent of immediately turning over the found evidence to the police. Id. at 403.

 The facts of this case are entirely different. Assuming, without deciding, that Chaney's taking
of the bag from Smith violated Tex. Penal Code Ann. § 31.03 (Vernon Supp. 2006) (criminalizing
theft of property from another who otherwise has greater right to possess), we conclude the trial court
could have reasonably believed and found Chaney's conduct was authorized by Jenschke. First,
Chaney clearly and unequivocally testified she took back and held the bag for the express purpose
of turning it (and its contents) over to police. Second, Chaney took back the bag and then actually
turned it over to police only a short time after Officer Bettis' arrival. Third, the bag contained pieces
of evidence--the two purchased boxes in which Bleckley had concealed the additional, stolen Band-Aids--that were instruments used by Bleckley to commit his theft and were, therefore, directly
related to the theft crime for which Bleckley was then being detained. Fourth, the trial court could
have reasonably concluded the bag itself was an instrument Bleckley used to commit his crime
because he had put the over-stuffed Band-Aid boxes inside the shopping bag and then carried that
bag (which held the stolen merchandise) out the door. Such a conclusion is supported by both
Jenschke and the evidence in this case. Accordingly, we cannot say Bleckley's first point of error
demonstrates error in the court below. We overrule this issue. (4)

IV. Was the Evidence Illegally Obtained by Officer Bettis?

 In his second issue, Bleckley contends Officer Bettis' search exceeded its lawful and proper
scope because it uncovered evidence of a crime other than theft and was impermissible under the
plain feel exception to the Fourth Amendment's warrant requirement. 

 Bleckley properly concedes that a search incident to a valid arrest is reasonable. But he cites
State v. Ballard, 987 S.W.2d 889 (Tex. Crim. App. 1999), for the proposition that a search incident
to arrest must be limited to obtaining evidence related only to the crime for which there pre-exists
probable cause for arrest--and that any additional evidence of other crimes is per se inadmissible. 
Ballard does not stand for such a proposition, nor is that a valid interpretation of the current state
of the law. In Ballard, the Texas Court of Criminal Appeals affirmed the now well-settled maxim
that once an officer has probable cause to arrest a suspect (in that case, for driving while intoxicated),
the officer is then authorized to search the passenger compartment of the automobile as a search
incident to arrest. Id. at 890-92. Ballard does not state that evidence of other crimes uncovered
during a proper search incident to arrest is inadmissible.

 Instead, the current status of the law is that, once an officer has valid probable cause to arrest
a suspect, the officer may search the immediate area surrounding the suspect at the time of the
arrest--"the area from within which he might gain possession of a weapon or destructible evidence." 
Vale v. Louisiana, 399 U.S. 30, 33 (1970) (quoting Chimel v. California, 395 U.S. 752, 763 (1969));
see also McGee v. State, 105 S.W.3d 609, 615 (Tex. Crim. App. 2003). For example, if the arrest
takes place inside a house, the house may be searched. Vale, 399 U.S. at 33-34. 

 In this case, Bleckley had been carrying the bag at issue at the time Chaney initially detained
him. This fact was known by Bettis when he made his decision to arrest Bleckley for the
misdemeanor theft, a decision which Bettis testified he had made before he began searching the bag. 
Thus, the successive search of the entirety of Bleckley's bag was permissible as a search incident to
arrest because the bag had been under Bleckley's control at the time of his initial detention and at
other times during his detention in the employee training room. Officer Bettis' search need not have
been limited to evidence only related to the theft. If a valid search incident to arrest uncovers
evidence of another, different crime than that for which the accused has already been arrested,
nothing in the federal or state constitutions or federal or state law prohibits this additional evidence
from being admitted at trial on the new crime. See, e.g., Shelby v. State, 201 S.W.3d 818 (Tex.
App.--Waco 2006, no pet.) (suspect detained on marihuana suspicion; subsequent discovery of
cocaine incident to arrest properly admissible); Dew v. State, No. 11-04-00093-CR, 2005 WL
1902589 (Tex. App.--Eastland Aug. 11, 2005, no pet.) (not designated for publication) (cocaine
properly admissible as product of search incident to arrest for traffic offense of driving without
license); Vactor v. State, 181 S.W.3d 461, 466-67 (Tex. App.--Texarkana 2005, pet. ref'd) (cocaine
properly admissible as product of search incident to arrest for resisting search). Because the trial
court could have properly determined Bettis' search of Bleckley's bag was conducted incident to
arrest, we overrule this second point of error. We, therefore, need not discuss the applicability of
the plain feel exception to the Fourth Amendment as a basis for validating the search at issue.

V. Conclusion

 We affirm the trial court's judgment.


 Jack Carter

 Justice


Date Submitted: October 3, 2006

Date Decided: November 14, 2006


Do Not Publish
1. As of June 28, 2006, "upon request of the losing party on a motion to suppress evidence, the
trial court shall state its essential findings. By 'essential findings,' we mean the trial court must make
findings of fact and conclusions of law adequate to provide an appellate court with a basis upon
which to review the trial court's application of the law to the facts." State v. Cullen, 195 S.W.3d 696,
699 (Tex. Crim. App. 2006).
2. See Tex. Penal Code Ann. § 31.03(a), (e)(1) (Vernon Supp. 2006).
3. Chaney had not earlier indicated she had seen a green felt bag inside the Band-Aid box. The
existence of the green bag did not become apparent until Officer Bettis removed the Band-Aid box
from Bleckley's shopping bag (which Chaney had returned to Bleckley before Bettis' arrival) during
Bettis' search. Bleckley has not affirmatively disclaimed ownership.
4. It is unnecessary for us to determine whether Jenschke requires the property seized to be
connected to the crime for which Bleckley was being held (theft), or if it might have permitted
Chaney to seize the bag merely because she suspected it contained illegal drugs, because the
evidence in this case suggests the bag and its contents were instruments connected to the underlying
theft.